14-1310

_____

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
_____

IN RE: ORINDA INTELLECTUAL PROPERTIES USA
HOLDING GROUP, INC.

Appellant

_____

APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK
OFFICE
PATENT TRIAL AND APPEAL BOARD CASE NO. 2013-005043
IN REEXAMINATION NO. 90/009,654
_____

BRIEF OF APPELLANT ORINDA INTELLECTUAL PROPERTIES
USA HOLDING GROUP, INC

Craig R. Kaufman
ckaufman@techknowledgelaw.com
TECHKNOWLEDGE LAW GROUP LLP
100 Marine Parkway, Suite 200
Redwood Shores, CA 94065
Telephone: (415) 902-0602

*Attorney for Appellant*

April 28, 2014

# CERTIFICATE OF INTEREST

IN RE: ORINDA INTELLECTUAL PROPERTIES USA HOLDING GROUP, INC.

No. 14-1310

Counsel for the Appellant certifies the following:

1. The full name of every party or amicus represented by me is:

Orinda Intellectual Properties USA Holding Group, Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

None.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Craig R. Kaufman – TechKnowledge Law Group LLP

Craig R. Kaufman – Freitas Tseng & Kaufman LLP (Freitas Tseng & Kaufman is no longer counsel of record for Orinda)

Joseph A. Sawyer, Jr. – Sawyer Law Group, P.C.


Date:  4/28/14                          /s/*Craig R. Kaufman*_____
                                        Signature of counsel
                                        Craig R. Kaufman
                                        Printed name of counsel

# TABLE OF CONTENTS

**Page(s)**

STATEMENTOF RELATED CASES ................................................................. 1

JURISDICTIONAL STATEMENT ................................................................. 2

STATEMENT OF THE ISSUES .................................................................... 3

STATEMENT OF THE CASE ......................................................................... 3

    A.     Procedural History Of The Re-Examination ....................................... 3

    B.     The '560 Patent. ................................................................................. 4

    C.     The Takagi Patent. ............................................................................. 8

    D.     The Board Decision .......................................................................... 11

SUMMARY OF THE ARGUMENT .............................................................. 14

ARGUMENT .................................................................................................. 15

    A.     Standard of Review. ......................................................................... 15

    B.     The Board Erred When It Expanded The Scope Of The Claim
           To Include Multiple Reproduction Processes That Occur In The
           Prior Art, If At All, As Different Processes. ..................................... 16

    C.     Substantial Evidence Does Not Support The Board's Decision
           That Claim 2 Is Anticipated When It Is Properly Construed
           Because Takagi Does Not Disclose A Process With Two
           Checks Of The Target Sector ............................................................ 19

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ............................ 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Advanced Display Sys., Inc. v. Kent State Univ.*
212 F.3d 1272 (Fed. Cir. 2000) ..........................................................................21

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*
512 F.3d 1338 (Fed. Cir. 2008) ..........................................................................17

*Cybor Corp. v. FAS Techs., Inc.*,
138 F.3d 1448 (Fed. Cir. 1998) (*en banc*) .........................................................15

*In re Hyatt*,
211 F.3d 1367 (Fed. Cir. 2000) ..........................................................................16

*In re Morris*,
127 F.3d 1048 (Fed. Cir. 1997) ..........................................................................15

*Net MoneyIN, Inc. v. Verisign, Inc.*,
545 F.3d 1359 (Fed. Cir. 2008) .........................................................15, 20, 21, 22

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) .........................................................16

*In re Rambus Inc.*,
694 F.3d 42 (Fed. Cir. 2012) ..............................................................................16

*Schumer v. Lab. Computer Sys., Inc.*,
308 F.3d 1304 (Fed. Cir. 2002) .....................................................................19, 20

## Statutes

35 U.S.C. § 102 ...................................................................................................20, 21

35 U.S.C. § 141 ...........................................................................................................2

## STATEMENTOF RELATED CASES

No other appeal in or from the Patent and Trademark Office related to the re-examination of U.S. Patent No. 5,438,560 has been before this or any other appellate court.

The result of this appeal will directly affect two pending infringement actions before the United States District Court for the Northern District of California:

*Orinda Intellectual Properties USA Holding Group, Inc. v. Sony Electronics Corp. et al.¸* Case No. 3:09-cv-04920-EDL; and

*Orinda Intellectual Properties USA Holding Group, Inc. v. Asustek Computer Inc. et al.*, Case No. 4:11-cv-02010-SBA.

Both of these district court actions are stayed pending the outcome of the re-examination of U.S. Patent No. 5,438,560, including this appeal.

1

## JURISDICTIONAL STATEMENT

This is an appeal from the final decision of the United States Patent and Trademark Office's Patent Trial and Appeal Board, which was entered on November 20, 2013.  This Court has jurisdiction to review the Board's decision pursuant to 35 U.S.C. § 141.

## STATEMENT OF THE ISSUES

1.     Did the Board err as a matter of law in its claim construction, when it construed the claimed method to encompass any checks of the target sector occurring after an initial reproduction command, regardless of any intervening subsequent reproduction commands and outputs of data?

2.     When claim 2 is properly construed, does substantial evidence support the finding that U.S. Patent No. 4,949,326 ("Takagi") discloses two checks of the target sector where the Board identifies no such process in its factual findings, instead identifying checking steps that take place in discrete, unrelated processes?

## STATEMENT OF THE CASE

### A. **Procedural History Of The Re-Examination**

This is an appeal from an *ex parte* reexamination of U.S. Patent No. 5,438,560.  The sole claim at issue is claim 2.

Sony, one of the defendants accused of infringing the '560 patent, requested *ex parte* re-examination of the '560 patent.  A51.  In its request, Sony contended that seven new pieces of prior art contained teachings relevant to claims 1-3 of the '560 patent: Fukushima (U.S. Patent No. 5,111,444); Yokogawa (Japanese Unexamined Patent Application Publication H2-162574); Fukushima (U.S. Patent No. 5,237,553); Taniwa (Japanese Unexamined Patent Publication H2-235265); Takagi (U.S. Patent No. 4,949,326); Banba (U.S. Patent No. 4,558,446); and

3

American National Standard for Information Systems – Small Computer System Interface.  A680-681 (Non-Final Re-Exam Office action at 2-3).  The examiner rejected the claims over Takagi, Taniwa and ANSI SCSI, finding the other references to be cumulative to the teachings in these references.  *Id.*    Claim 2 was rejected as anticipated by Takagi.  *Id.*  Claim 1 was rejected as obvious over Takagi taken together with ANSI SCSI.  A683-685.  Claim 3 was rejected as obvious over Takagi, taken with both ANSI SCSI and Taniwa.  A685-688.

During the re-examination, Orinda cancelled claims 1 and 3, and appealed the rejection of claim 2 to the Patent Trial and Appeal Board.  A820; A840-846.  Before the Board, Orinda argued that Takagi did not anticipate the claimed invention because it did not disclose two checking steps for the target sector and because Takagi did not disclose the claimed storage means.  A851-861.

After *ex parte* reexamination, the Board affirmed the examiner's rejection of claim 2 of the '560 patent as anticipated by Takagi.  A11.

## B. The '560 Patent

The '560 Patent was filed on October 21, 1993, issued on August 1, 1995, and expired on October 21, 2013.  The relevant aspects of the '560 patent relate to a method for reproducing information from an optical disk-shaped medium, *i.e.,* a DVD or similar storage medium.  A13; A21 at col. 4:1-25; A24 claim 2.  The summary of the invention describes an apparatus and method for recording and

4

reproducing data from optical disks.  A21 at col. 4:27-41; 50-53.  An exemplary

embodiment of the apparatus used to perform the methods is shown in Figure 3,

reproduced below:



FIG. 3

A16.

 The apparatus includes a CPU, RAM 3 and Mapping Memory 7, and various

control circuits and control logic for reading and writing to the optical disk.  A17

(Fig. 3); A21-22, col. 4:56-5:24.  Figure 8 from the '560 patent is a flow chart that

illustrates the method for reproducing data, and the specification describes this

process in detail.  A19 (Fig. 8) and A23 at col. 7:52-8:44.



FIG. 8

A19.

As shown and described, the reproduction process described in the '560 patent includes a number of steps that occur after receiving a "reproduction command." For purposes of this appeal, the key steps are the checking steps (B2 and B4) where the target sector is checked to determine whether it was a bad sector. The '560 patent describes first check, in step B2, as follows:

6

> Upon receiving the device command block, the disk controller 6 instructs the drive control circuit to scan the first mapping region 14 of a block to which the target sector from which the data to be read belongs. It is checked at the step B2 whether the target sector is a bad sector. Information is stored in the RAM 3 in accordance with this checked result.

A23 at col. 7:60-66.

> The specification describes a second check of the target sector, at step B4:

> It is checked at the step B4 whether the target sector is the bad sector. If it is checked at the step B4 that the target sector is the bad sector, a replacement sector address is detected from the mapping information in the mapping memory 7 to read a replacement sector of the corresponding block at the step B8.

*Id.* at col. 8:11-16. Following completion of the checks, the disk controller directs the optical head to the target sector, the data is read by the optical head, applied to a modulating/demodulating circuit, and stored in RAM 3. *Id.* at col. 8:23-31. At the end of the process, the data is error corrected and is sent to the main processor through the system interface. *Id.* at col. 8:32-43.

Claim 2 of the '560 patent reflects this reproduction process and is the only claim at issue in this appeal. This claim is reproduced below:

> 2. A method of reproducing optical information using an optical disk, comprising the steps of:

> *checking whether a target sector of the optical disk from which data is to be reproduced is a bad sector, upon receiving a data reproduction command from a main processing means;*

> storing information into storage means in accordance with the checked result;

7

reading information from mapping sectors of a block of the optical disk to which said target sector belongs and storing the read information into mapping memory means;

*checking whether said target sector is the bad sector*;

reading a replacement sector in a center block of the optical disk if it is detected that the target sector is the bad sector, and updating the mapping sector information in said mapping memory means;

seeking said target sector if it is checked that said target sector is normal and setting the reproduction command in a sector read/write control means so that the data can be reproduced from said target sector;

moving an optical head to said target sector;

demodulating the data read by said optical head;

correcting an error of the demodulated data and storing the error-corrected data into said storage means; and

sending the error-corrected data stored in said storage means to said main processing means through system processing means.

A24 at col. 9:17-47 (emphasis added).

### C. The Takagi Patent.

Takagi, which issued on August 14, 1990, is the only prior art at issue. A4.

Takagi discloses a method and system for writing and reading to optical disks and

performing error correction so that data can be reproduced with high reliability.

As explained more fully below, however, these methods are different in material

8

ways from the claimed invention and the evidence does not support the Board's

conclusion.

Takagi describes a number of different operations that can be performed on

its optical disks, including both writing data to the optical disk and reproducing

data from the optical disk.  Takagi's data reproduction operation is described in

columns 7 and 8, with reference to Figure 15.  A45, cols. 7:3-8:39.  Figure 15 from

Takagi is reproduced below:



A40.

In Takagi's reproduction process, the CPU 4 outputs a read command to

system interface 5.  A45, col. 7:6-10.  The control CPU 10 receives the device

command blocks from the system interface, and instructs the drive to seek the track

in the alternate/mapping area.  *Id.* at col. 7:11-14.  After seeking the track is

complete, the control CPU 10 reads the mapping sector M1 and stores it in the

mapping memory 12.  *Id.* at col. 7:15-19.  If the mapping sector M1 is erroneous,

mapping sector M2 is read.  *Id.* Once the mapping data is stored in mapping

memory 12, the control CPU 10 sets the address of the object sector, and sends a

read command to the sector read/write control circuit 9.  *Id.* at col. 7:18-22.  Takagi

then describes a checking step:

> With respect to the object sector address, a check is made to see
> if the associated sector is defective or not, by making reference
> to the mapping data in the mapping memory 12, prior to
> reproducing. If the associated sector is a defective sector, a
> corresponding alternate sector address is sought from the
> mapping data.

A45 at col. 7:22-28.  The controller 3 then locates the track corresponding to the

object sector address, and instructs it to seek the track. *Id.* at col. 7:29-31.  When

the read/write control circuit detects the output sector, it causes an output signal to

be applied to modem 8, which demodulates the read data and stores it in RAM 6.

*Id.* at col. 7:32-36.  The "demodulated data stored in RAM 6 are subjected to error

detection and correction in the error detection/correction circuit 7, and thereafter,

they are stored again in the RAM 6." *Id.* at col. 7:37-40.  Finally, the corrected data in RAM 6 are transferred to the host CPU 4 through the system interface 5. *Id.* at col. 7:41-43.  Thus, in Takagi's description of its reproduction process, the "mapping sector" is checked once, and the "object sector" is checked once.

In addition to the reproduction process, Takagi discloses a separate initialization process that occurs when a new disk is inserted into the optical disk drive, or when the optical disk drive is powered up.  A44 at col. 5:19-67.  After detecting what type of disk is present, the controller "executes each of the read, write and erase commands in accordance with the kind of each of the RO optical disk and the WT disk." *Id.*  at col. 5:27-32.  When the disk is a write-type disk, test data are "recorded and reproduced in all of the sectors in each of the blocks 15, and a check is performed to see if there is any sector address error, data error, or defect in the data section." *Id.* at col. 5:34-38.

**D. The Board Decision**

The Board affirmed the Examiner's rejection of claim 2.  A11.  In support of its decision, the Board made specific factual findings to support its conclusion that Takagi disclosed the required two checks of the target sector.

The Board made the following findings to support its conclusion that Takagi disclosed the first checking step:

> We therefore agree with the Examiner's finding that the column 5 citation [col. 5, ll. 19-41] describes an initialization process

11

upon a read reproduction command in that it describes what happens "when the power source is turned on or when the optical disk 1 is exchanged" (col. 5, ll. 20-22) and "the controller 3 executes each of the read write and erase commands."  Col. 5 ll. 29-30.

A7.  This passage does not refer to Takagi's reproduction process, but rather to the separate initialization process that occurs when a new disk is placed in the optical drive, or when the drive is powered on.   A44, col. 5:19-41.  The cited passage is reproduced below:

> Firstly, as illustrated in the part (a) in FIG. 12, *when the power source is turned on or when the optical disk 1 is exchanged*, the controller 3 inquires concerning the kind of the optical disk 1 which is mounted presently on the drive 2.  The drive 2 detects the kind of the optical disk 1 by a discriminating a hole formed in the optical disk cartridge or by the control information recorded on a control track of the optical disk 1, and informs the controller 3 of the content of the detected kind of the optical disk 1.  *Then, in the part (b), the controller 3 executes each of the read, write and erase commands in accordance with the kind of each of the RO optical disk and the WT disk.*
>
> When the optical disk 1 is a write type optical disk, the blocks #1 to #N among the blocks 15 are formatted at first. *Test data are recorded and reproduced in or from all of the sectors in each of the block 15, and a check is performed to see if there is any sector address error*, data error or defect in the data section.  It is assumed that the mapping sector M (M1 and M2) has recorded therein mapping data indicative of the alteration of defective sectors involving errors.

A44 at col. 5:19-41(emphasis added).  Put simply, when the disk is inserted or the drive is turned on, the drive conducts write and read tests to make sure it is

12

working properly.  The Board did not identify a second checking step in this

"initialization" process.  A7.

The Board made the following findings to support its conclusion that the

second checking step was disclosed:

> Citing column 7, lines 19-26 of Takagi, the Examiner
> also finds that Takagi discloses the second checking step:
> "Checking whether said target sector is the bad sector."  Ans. 5.
> This portion of Takagi reads, in part: "With respect to the object
> sector address, a check is made to see if the associated sector is
> defective or not, by making reference to the mapping data in the
> mapping memory 12, prior to reproducing."  Col. 7, ll. 22-26.
> Referring to this Takagi citation, Appellant agrees that "with
> respect to the object sector address a check is made to see if the
> associated sector is defective or not."  App. Br. 14; Reply Br. 5
> (emphasis omitted).  *See also* Tr. 154:16-18.

> Because the first checking step disclosed in column 5
> checks *all* sectors, the second checking step necessarily checks
> at least one of the sectors that had previously been checked and,
> therefore, checks whether "said" sector is the bad sector.

A7 (emphasis original).  This passage cites to Takagi's reproduction process, and

this check occurs after a reproduction request is made by the CPU and before the

data is transferred to the CPU.  A45 at col. 7:3-44.  The cited passage that the

Board relied upon is reproduced below:

> (4) After completion of storing the mapping data in the
> mapping memory 12, the control CPU 10 sets the address of the
> object sector and a read command to the sector read/write
> control circuit 9.  With respect to the object sector address, a
> check is made to see if the associated sector is defective or not,
> by making reference to the mapping data in the mapping
> memory 12, prior to reproducing.

13

A45 at col. 7:19-26.  The Board made no finding that Takagi's reproduction

process described in column 7 included the first check of the target sector.  A7.

    The Board did not address or rely upon any of the Examiner's other findings

with respect to Takagi's alleged disclosure of two checking steps.   A8.

    With respect to the "storage means" limitation, the Board made the

following findings to support its conclusion that the "storage means" were present

in Takagi:

> As part of Takagi's initial checking step, outputs of control
> circuit 9 are inputted to OR circuit 14, the output of which is
> checked by CPU 10 to detect the presence or absence of errors.
> Takagi, col. 5, ll. 49-56.  "If an output of the OR circuit 14 is
> detected, it is decided that the sector address is correct."
> Takagi, col. 5, ll. 56-57.  The described detection of OR circuit
> output occurs because CPU 10 stores information, however
> briefly, "in accordance with," or "associated with," or
> "reflective of what has occurred during the check."  For at least
> this reason, Takagi discloses the claimed "storing information
> into storage means in accordance with the checked result."

A9-10.  The Board did not consider Orinda's argument that the "mapping

memory" and RAM of Takagi were different, and rejected Orinda's other

arguments as not reflected by the claim limitations.  A10.

## SUMMARY OF THE ARGUMENT

    The Board erred as a matter of law when it construed the claim to

encompass a process where two checks of the target sector are conducted at any

time after a reproduction command, regardless of any intervening data output steps

14

and additional reproduction requests that may occur.  As properly construed, the claimed invention is a reproduction process bounded by a reproduction request and the output of the data sought to be reproduced to the main processing means – nothing more.

Viewed in the proper framework, the Board's affirmance of the rejection of claim 2 cannot be sustained.  The Board's factual findings do not come from a single reproduction process disclosed by Takagi.  Instead, the Board has picked steps from two different processes disclosed by Takagi and attempted to combine them to arrive at the claimed invention.  As explained by this Court in *Net MoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d, 1359, 1369-71 (Fed. Cir. 2008), the Board cannot pick and choose steps from two discrete processes and combine them to find anticipation.  The Board's decision should be reversed.

## ARGUMENT

### A. Standard of Review.

Claim construction is a question of law that this Court reviews *de novo.* *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1451 (Fed. Cir. 1998) (*en* banc). During prosecution, the Board applies the "broadest reasonable interpretation" when construing claims and this Court reviews the construction to determine whether it is reasonable in light of the evidence before the Board.  *In re Morris*, 127 F.3d 1048, 1055 (Fed. Cir. 1997).  However, where the patent at issue has

expired, the Board construes claim terms using the principles set forth in *Phillips v.*

*AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*).  *In re Rambus Inc.*, 694

F.3d 42, 46 (Fed. Cir. 2012).

Anticipation is a question of fact, and this Court upholds the Board's factual

determinations unless they are not supported by substantial evidence.  *Rambus*, 694

F.3d at 46; *In re Hyatt*, 211 F.3d 1367, 1371-72 (Fed. Cir. 2000).

B. **The Board Erred When It Expanded The Scope Of The Claim To Include Multiple Reproduction Processes That Occur In The Prior Art, If At All, As Different Processes.**

The Board erred when it construed the claimed method as a whole – the

arrangement of the steps – and concluded that it can properly read to cover a

process where the required two checks of the target sector can occur in two

separate and unrelated reproduction processes.  As explained below in section C,

when properly construed, there is no substantial evidence to support the Board's

affirmance of the Examiner's rejection of claim 2.

Claim 2 provides a "method of reproducing optical information using an

optical disk."  A24 at Claim 2.  It recites ten steps in this process, which begin with

"checking whether a target sector of the optical disk from which data is to be

reproduced is a bad sector, upon receiving a data reproduction command from a

main processing means;" and ends by "sending the error-corrected data stored in

said storage means to said main processing means through system processing means." *Id.*

As a general rule, the steps of a method are not limited to a specific order unless the claim explicitly or implicitly so requires. *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1345 (Fed. Cir. 2008). This, however, is a case where the claimed method does require certain specific temporal relationships between the steps. The process is bounded by the reproduction request and the ultimate transfer of the reproduced data read from the disk to the main processor, and the intervening steps must occur, in many cases, in a specific order. A24 (Claim 2). For example, the first step in claim 2 requires that the first check occur "upon" receiving the reproduction command. *Id.* at claim 2. The second step must necessarily follow the first step, as it requires storing information into storage means in accordance with the checked result, which obviously cannot occur until the check is completed. *Id.*

Other steps share a similar cause and effect relationship. For example, the claim later requires "checking whether the target sector is the bad sector" and if so, then taking certain actions depending on the result. A24 at claim 2. Again, one cannot occur without the other and these steps must occur in their relative sequence. The last step, sending the error corrected data to the "main processing means" must, of necessity, be the last step in the process. Additional steps that

17

occur before the reproduction command, or after the read data is transferred to the

processor, are not part of the claimed process. Thus, in the claimed process, the

target sector is checked – twice – before moving an optical head to read the target

sector and ultimately outputting the data to the main processing means. The only

natural reading of the claim is that this is a single, unitary process.

This point was made during the argument:

> So in order to perform the step, you have to receive the
> command to read and so you receive the reading command, you
> do a first check, you do the map check, you do the second
> check and then you do the reproduction.
> Because of sort of the flow that needs to be done to then output
> the data, they need to occur after the reading command is given
> and they need to follow in a basic predefined order in order to
> accomplish the purpose of the invention.

A923 at 13:14-21. While the Board appears to acknowledge this, it proceeds to

treat the claim with an unreasonable, and incorrect, breadth.

The Board's construction simply requires the two checking steps to occur

after a first reproduction command. A6. The construction ignores intervening data

writes or subsequent reproduction commands that might occur between the time

the initial reproduction command is made, and the second check is performed. The

Board had to construe the claim this way, as this is the only way to shoehorn

Takagi's disclosure into the claims. The Court should reject the Board's

construction of claim 2 that permits it to cover the combination of a self-check

followed by a separate read command.

C. **Substantial Evidence Does Not Support The Board's Decision That Claim 2 Is Anticipated When It Is Properly Construed Because Takagi Does Not Disclose A Process With Two Checks Of The Target Sector.**

A method claim is anticipated if a prior art reference discloses performance of all of the operative steps of the method. *See, e.g., Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1309 n.3 (Fed. Cir. 2002)("[A] method claim will be anticipated by an earlier device performing all of the operative steps of the method.")  But when the claim is given a reasonable construction – the Board's conclusion that claim 2 is anticipated cannot stand because there is no disclosure of a process with all of the operative steps.

As explained above, Claim 2 is a method of reproducing – reading—optical information from an optical disk.  A24.  The claimed reproduction method requires two checks during the claimed reproduction process – reflected in the following claim limitations:

- "checking whether a target sector of the optical disk from which data is to be reproduced is a bad sector;" and

- "checking whether said target sector is the bad sector."

The Board made factual findings to support its conclusion that these steps were disclosed in Takagi.

To establish that the first check was present, the Board cited Takagi's initialization process described in column 5 of Takagi.  A7.  The Board found that

the  initialization process checked all sectors after recording the test data, citing

col. 5, lines 35-38 of Takagi.  *Id.*

The Board found that the second checking step was disclosed in Takagi's

explanation of its reproduction step, a separate process from the initialization step.

A7.  It relies on a discussion from column 7, which reflects a check of the object

sector.  *Id.*

The Board did not find that Takagi discloses two checks of the target sector

during Takagi's disclosed reproduction process.  A7-8.  Nor did the Board find that

Takagi discloses two checks during the initialization process.  *Id.*  Thus, to find

that Takagi discloses two checking steps, the Board selectively pieced together

steps from different and discrete processes in an attempt to establish disclosure of

the claimed process.

The Board's approach – picking and choosing elements from different

discrete embodiments – has been rejected by this Court.  *Net MoneyIN*, 545 F.3d at

1372 ("We thus hold that unless a reference discloses within the four corners of the

document not only all of the limitations claimed but also all of the limitations

arranged or combined in the same way as recited in the claim, it cannot be said to

prove prior invention of the thing claimed, and thus, cannot anticipate under 35

U.S.C. § 102.")  In *Net MoneyIN,* this Court faced a very similar fact pattern to the

present case.  The district court entered summary judgment that a claim requiring

five links was anticipated by a reference (the "iKP reference") that disclosed "all five of these links . . . albeit in two separate disclosed examples." *Id.* at 1369. This Court rejected the district court's analysis, and explained the correct analysis in this situation. To support a rejection under section 102, the prior art must show "that the four corners of a single, prior art document describe every element of the claim." *Id., citing, Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000). But, as this Court noted, this principle "does not tell the whole story." *Id.* Not only must the reference disclose all of the elements of the claim within the four corners of the document, but it must also show the limitations "arranged or combined in the same way as in the claim." *Id.* at 1370. This Court reversed the district court's invalidity decision because it impermissibly picked limitations from two discrete examples. *Id.*

Like the district court in *Net MoneyIN*, the Board has picked elements of two discrete processes to support its conclusion that claim 2 is anticipated. The Board takes the first checking step from the initialization process described in column 5 of Takagi. A7. The Board then takes the second check from the reproduction process described in column 7 of Takagi. *Id.* In so doing, the Board has impermissibly selected two discrete steps from two discrete processes in the prior

21

art, and has reassembled them in an effort to establish anticipation.[1]  But this not a proper analysis, and the Board should be reversed. [2]

The Board made no factual findings that show a single process in Takagi that includes each step of the claimed invention, as arranged in the claim. Accordingly, its conclusion that claim 2 is anticipated is not supported by substantial evidence, and the rejection should be reversed.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the reasons set forth herein, Orinda respectfully requests this Court to reverse the final decision of the Board that claim 2 of the '560 patent is anticipated by Takagi, and direct the Patent and Trademark Office to issue a reexamination certificate confirming the patentability of claim 2.

---

[1] As part of its analysis, the Board seemed to be concerned that there was no reason articulated for the second checking step.  A6.  But this is not relevant to the question of anticipation.  Differences "between the prior art reference and a claimed invention, however slight, invoke the question of obviousness, not anticipation."  *Net MoneyIN*, 545 F.3d at 1371.  Takagi does not disclose a process having two checks of the target sector – that ends the inquiry.

[2] Likewise, it appears that the Board made the same error with respect to its conclusion that "storage means" were present – again relying upon teachings from the initialization step in column 5 of Takagi.  A9-10.

Dated: April 28, 2014                    Respectfully Submitted,

                                         */s/ Craig R. Kaufman*
                                         Craig R. Kaufman
                                         TECHKNOWLEDGE LAW GROUP LLP
                                         100 Marine Parkway, Suite 200
                                         Redwood Shores, CA 94065
                                         Tel: (415) 902-0602

                                         *Attorney for Appellant*

Addendum 1



# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/009,654 | 01/20/2010 | 5438560 | SONYNJ 3.6-022 | 6571 |

29141     7590     11/20/2013
Sawyer Law Group, P.C.
P.O. Box 51418
Palo Alto, CA 94303

| EXAMINER |
|---|
| WOOD, WILLIAM H |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 11/20/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

UNITED STATES PATENT AND TRADEMARK OFFICE

———————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————————

*Ex Parte* ORINDA INTELLECTUAL PROPERTIES
USA HOLDING GROUP, INC.
Patent Owner and Appellant

———————————

Appeal 2013-005043
Reexamination Control 90/009,654
Patent 5,438,560[1]
Technology Center 3900

———————————

Before KEVIN F. TURNER, STANLEY M. WEINBERG, and
JENNIFER L. McKEOWN, *Administrative Patent Judges*.

WEINBERG, *Administrative Patent Judge*.

DECISION ON APPEAL

A.    STATEMENT OF THE CASE

Introduction

This reexamination proceeding arose from a third-party request for *ex parte* reexamination filed on January 20, 2010.  Orinda Intellectual Properties USA Holding Group, Inc. (Appellant), the owner of the patent

———————————

[1] The patent involved in this reexamination appeal proceeding (the " '560 Patent") issued to Si H. Lee on August 1, 1995.

Appeal 2013-005043
Reexamination Control 90/009,654
Patent 5,438,560

under reexamination,[2] appeals under 35 U.S.C. §§ 134(b) and 306 from a

September 28, 2011 Final Rejection of claim 2.  Claims 1 and 3 have been

canceled.  App. Br. 3[3]; Ans. 2.[4]  An oral hearing was conducted on July 17,

2013.  A transcript ("Tr.") of the hearing was made of record on August 15,

2013.

We have jurisdiction under 35 U.S.C. §§ 134(b) and 306.

We affirm.

Related Proceedings

Appellant has informed us about the following judicial proceedings

that are related to the present reexamination:

*Orinda Intellectual Properties USA Holding Group, Inc. v.
Sony Electronics Corp. et al.*, Case No. C-09-04920-EDL.

*Orinda Intellectual Properties USA Holding Group, Inc. v.
Asustek Computer et al.*, Case No. 4:11-cv-02010-SBA.

Appellant also informs us that the above two matters had been stayed as of

the February 16, 2012 filing date of its Appeal Brief, pending a decision by

the Board.

The Invention

The invention relates to a method of reproducing optical information

using an optical disk, including checking whether a target sector of the

_____

[2] *See* Patent Assignment Abstract of Title, Reel 020741 Frame 0983
recorded April 3, 2008 and entered into the record of this proceeding as
"Title Report" on January 13, 2010.
[3] Appellant relies on its Appeal Brief filed February 16, 2012 (App. Br.) and
its Reply Brief filed October 5, 2012 (Reply Br.).
[4] The Examiner's Answer was mailed on August 7, 2012.

2

Appeal 2013-005043
Reexamination Control 90/009,654
Patent 5,438,560

optical disk from which data are to be reproduced is a bad sector. Spec. col.
4, ll. 1-6.

Claim 2, the appealed subject matter, is reproduced below, with
disputed limitations emphasized (App. Br. 17, Claims Appx):

> 2.     A method of reproducing optical information using an
> optical disk, comprising the steps of:
>     *checking whether a target sector of the optical disk from
> which data is to be reproduced is a bad sector*, upon receiving a
> data reproduction command from a main processing means;
>     *storing information into storage means in accordance
> with the checked result*;
>     reading information from mapping sectors of a block of
> the optical disk to which said target sector belongs and storing
> the read information into mapping memory means;
>     *checking whether said target sector is the bad sector*;
>     reading a replacement sector in a center block of the
> optical disk if it is detected that the target sector is the bad
> sector, and updating the mapping sector information in said
> mapping memory means;
>     seeking said target sector if it is checked that said target
> sector is normal and setting the reproduction command in a
> sector read/write control means so that the data can be
> reproduced from said target sector;
>     moving an optical head to said target sector;
>     demodulating the data read by said optical head;
> correcting an error of the demodulated data and storing the
> error-corrected data into said storage means; and
>     sending the error-corrected data stored in said storage
> means to said mean processing means through system
> processing means.

The Rejection

Claim 2 stands rejected under 35 U.S.C. § 102(b) as anticipated by
Takagi (US 4,949,326). Final Rejection 3; Ans. 4.

3

Appeal 2013-005043
Reexamination Control 90/009,654
Patent 5,438,560

## B.    ANALYSIS

It appears that the '560 Patent expired on October 21, 2013.  While claims are generally given their broadest possible scope during prosecution, *In re Hyatt,* 211 F.3d 1367, 1372 (Fed. Cir. 2000), the Board's review of the claims of an expired patent is similar to that of a district court's review, *Ex Parte Papst–Motoren,* 1 U.S.P.Q.2d 1655, 1655–56 (B.P.A.I. Dec. 23, 1986).  *See In re Rambus Inc.,* 694 F.3d 42, 46 (Fed. Cir. 2012).  In a reexamination proceeding involving claims of an expired patent, claim construction pursuant to *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (words of a claim "are generally given their ordinary and customary meaning" as understood by a person of ordinary skill in the art in question at the time of the invention) is applied since the expired claims are not subject to amendment.

At various points in the Answer, the Examiner states he is relying upon principles of "broadest reasonable interpretation" of the claims. *See, e.g.,* Ans. 8, 9, 11-13.  Our analysis, instead, relies upon the ordinary and customary meaning of the claim terms at issue because the '560 Patent has expired.  Any distinctions from the different claim constructions are noted below.

*Checking Whether A Target Sector Is A Bad Sector and*
*Checking Whether Said Target Sector Is the Bad Sector*

Claim 2 recites two checking steps.  The first recited checking step occurs "upon receiving a data reproduction command from a main processing means."  The claim does not recite when the second checking

4

Appeal 2013-005043
Reexamination Control 90/009,654
Patent 5,438,560

step occurs.  Appellant does not argue about the order of the steps; but contends only that both checks have to occur after a reading command has been made.  Tr. 13:11-14:2.  Because claim 2 does not recite a "reading command," we assume that Appellant refers to the recited "reproduction command."  Also, Appellant does not explain why the method uses two checking steps; i.e., why the same target sector is checked twice.  Tr. 11; 14:15-17.  Appellant contends that Takagi checks a target sector once, while Appellant's system checks it twice.  *See*, App. Br. 13; Reply Br. 4; Tr. 15:19-23.

The first checking step reads: "checking whether a target sector of the optical disk from which data is to be reproduced is a bad sector, upon receiving a data reproduction command from a main processing means."  Although Takagi refers to "object sectors" (*see e.g.*, col. 4, l. 4; col. 5, ll. 44-45) and claim 2 recites a "target sector," Appellant agrees that "[w]hat Takagi refers to, what we call the target sector, is the object sector.  There's no real dispute in terms of that particular naming convention."  Tr. 4:3-4.

The Examiner cites a number of places in Takagi where he contends the first target sector checking limitation is shown.  Ans. 4.  One of the cites is col. 5, ll. 19-41 where, the Examiner finds, Takagi shows initialization operations that check a target sector upon a read/reproduction command.  Ans. 11.  Although Appellant acknowledges that the Examiner's finding relies on col. 5, ll. 19-41 in support of this finding (App. Br. 10), neither of Appellant's briefs persuasively rebut this finding.  At the hearing, moreover, Appellant agreed with part of the finding based on the column 5 citation: that Takagi is checking a target sector. Tr. 14:20-15:6.

5

Appeal 2013-005043
Reexamination Control 90/009,654
Patent 5,438,560

We therefore agree with the Examiner's finding that the column 5 citation describes an initialization process upon a read/reproduction command in that it describes what happens "when the power source is turned on or when the optical disk 1 is exchanged" (col. 5, ll. 20-22) and "the controller 3 executes each of the read, write and erase commands." Col. 5, ll. 29-30.

We also find that the Examiner's column 5 citation (col. 5, ll. 35-38) discloses that Takagi checks *all* of the sectors: "Test data are recorded and reproduced in or from all the sectors in each of the blocks 15, and a check is performed to see if there is any sector address error, data error, or defect in the data section."

Citing column 7, lines 19-26 of Takagi, the Examiner also finds that Takagi discloses the second checking step: "checking whether said target sector is the bad sector." Ans. 5. This portion of Takagi reads, in part: "With respect to the object sector address, a check is made to see if the associated sector is defective or not, by making reference to the mapping data in the mapping memory 12, prior to reproducing." Col. 7, ll. 22-26. Referring to this Takagi citation, Appellant agrees that "with respect to the object sector address a check is made to see if the associated sector is defective or not." App. Br. 14; Reply Br. 5 (emphasis omitted). *See also* Tr. 15:16-18.

Because the first checking step disclosed in column 5 checks *all* sectors, the second checking step necessarily checks at least one of the sectors that had previously been checked and, therefore, checks whether "said" sector is the bad sector.

6

Appeal 2013-005043
Reexamination Control 90/009,654
Patent 5,438,560

Appellant points out that Takagi checks the sector "by making
reference to the mapping data in the mapping memory 12." App. Br. 14;
Reply Br. 5. By referring to Takagi's reference to mapping data, Appellant
appears to suggest that the sector check in column 7 is not performed in the
same way that Appellant's second check is performed. However, the second
checking limitation neither limits the sequence nor the manner of conducting
that particular checking step. To the extent, therefore, that Appellant makes
such a suggestion, it is not persuasive.

For all of the above reasons, we agree with the Examiner that Takagi
discloses two checking steps as claimed. We do not address the Examiner's
other reasons for finding that Takagi discloses the claimed two checking
steps.

*Storing Information Into Storage Means*
*In Accordance With The Checked Result*

Claim 2 recites that after the first checking step, the following step
occurs: "storing information into storage means in accordance with the
checked result," which Appellant contends Takagi does not disclose.
App. Br. 7. The Examiner concludes that "information" as recited in the
claim, "can be anything" and "does not require what the information is."
Ans. 7. Appellant agrees that the claim does not recite the precise nature of
the information that is checked or stored. Tr. 4:20-24.

The Examiner also concludes that the claimed "'[i]n accordance with'
merely requires showing some relationship with between [sic] the
'information' and the 'checked result' . . . does not indicate in what manner
the actions are 'in accordance with' the checked result . . . or how it is
specifically related[] to the checked result." Ans. 7. Appellant agrees that

7

Appeal 2013-005043
Reexamination Control 90/009,654
Patent 5,438,560

the claimed "in accordance with" can be read as "associated with" (Tr. 4:22-23; 5:6-10) and as "something reflective of what has occurred during the check." Tr. 5:11-12.

The Examiner also concludes that "'storage means' reads upon all possible ways of storing something." Ans. 7. "Storage, as in a memory store, is merely a device or medium that can retain data for subsequent retrieval." Ans. 8. For example, the Examiner finds that Takagi has storage means in "the data and instructions that move through the registers (storage memory) of the processor;" that is, the CPU referenced at Takagi column 7, lines 15-17. As another example, the Examiner finds that "the main memory (equivalent of a RAM generically) of the processor/CPU of Takagi is also the storage means." Ans. 7-8.[5] Appellant therefore incorrectly asserts that the Examiner has not indicated where Takagi discloses a storage means (App. Br. 7; Reply Br. 2) and does not persuasively rebut the Examiner's finding that Takagi's CPU stores data and instructions.

As part of Takagi's initial checking step, outputs of control circuit 9 are inputted to OR circuit 14, the output of which is checked by CPU 10 to detect the presence or absence of errors. Takagi, col. 5, ll. 49-56. "If an output of the OR circuit 14 is detected, it is decided that the sector address is correct." Takagi, col. 5, ll. 56-57. The described detection of OR circuit output occurs because CPU 10 stores information, however briefly, "in accordance with," or "associated with," or "reflective of what has occurred

---

[5] The ordinary and customary meaning of "storage" is "any device in or on which information can be kept." Microsoft *Computer Dictionary* (5th ed. 2002) 498. A CPU "encompasses both the processor and the computer's memory." *Id.* At 132.

8

Appeal 2013-005043
Reexamination Control 90/009,654
Patent 5,438,560

during the check." For at least this reason, Takagi discloses the claimed "storing information into storage means in accordance with the checked result."

Appellant argues that another of the Examiner's findings regarding a storage means in Takagi (Takagi's mapping memory; *see* Ans. 8) is incorrect for various reasons. *See* Tr. 6:9-19; App. Br. 8-9; Reply Br. 3. We need not resolve whether Takagi's mapping memory anticipates the recited "storage means" in view of our agreement with the Examiner's findings regarding Takagi's CPU.

Appellant also contends that Takagi does not disclose the following limitations: storing the target or object sector in a storage means (App. Br. 10, 11; Reply Br. 3); a checked result of whether the reproduced target sector is a bad sector stored in the storage means (App. Br. 11); information related to the checked result is stored in the storage means (App. Br. 13); store the checked results of whether the target section is a bad sector in a storage means (App. Br. 13; Reply Br. 4). These arguments are not persuasive because none of the purported limitations are actually recited in claim 2.

We are therefore not persuaded that the Examiner erred in rejecting claim 2.

9

Appeal 2013-005043
Reexamination Control 90/009,654
Patent 5,438,560

## CONCLUSION

Under § 102, the Examiner did not err in rejecting claim 2.

## DECISION

The Examiner's decision rejecting claim 2 is affirmed.

<u>AFFIRMED</u>

10

Appeal 2013-005043
Reexamination Control 90/009,654
Patent 5,438,560


PATENT OWNER:
SAWYER LAW GROUP, P.C.
P.O. BOX 51418
PALO ALTO, CA 94303


THIRD PARTY REQUESTER:
MARCUS J. MILLET
LERNER, DAVID, LITTENBERG, KRUMHOLZ & MENTLIK, LLP
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090


cu

11

Addendum 2

US005438560A

# United States Patent [19]

## Lee

[11] Patent Number: **5,438,560**

[45] Date of Patent: **Aug. 1, 1995**

[54] **APPARATUS AND METHOD FOR RECORDING/REPRODUCING OPTICAL INFORMATION AND OPTICAL DISK-SHAPED RECORDING MEDIUM**

[75] Inventor: **Si H. Lee,** Kyoungki-do, Rep. of Korea

[73] Assignee: **Hyundai Electronics Industries Co., Ltd.,** Rep. of Korea

[21] Appl. No.: **139,033**

[22] Filed: **Oct. 21, 1993**

[30] **Foreign Application Priority Data**

Dec. 31, 1992 [KR] Rep. of Korea .................... 27199

[51] Int. Cl.⁶ ................................. **G11B 7/00**
[52] U.S. Cl. ......................................... **369/58;** 369/54; 369/47; 369/48
[58] Field of Search ...................... 369/58, 47, 48, 49, 369/59, 54, 53, 424, 32

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 4,223,347 | 9/1980 | Bouwhuis et al. . |
| 4,925,717 | 5/1990 | Tsukamura et al. . |
| 5,111,444 | 5/1992 | Fukushima et al. .................. 369/58 |
| 5,235,585 | 8/1993 | Bish et al. .......................... 369/58 X |

Primary Examiner—Georgia Y. Epps
Assistant Examiner—Muhammad N. Edun
Attorney, Agent, or Firm—Wigman, Cohen, Leitner & Myers

[57] **ABSTRACT**

An optical disk-shaped recording medium comprising a plurality of tracks, the tracks constituting blocks in the unit of a predetermined number, each of the blocks being provided with a data region and a first mapping region, a second mapping region being further provided on a center one of the entire tracks, each of the first mapping regions including mapping sectors and replacement sectors, the second mapping region including; a mapping information recording region and a replacement sector region for the first mapping regions of the whole of the blocks, the mapping sectors of each of the first mapping regions recording mapping information about bad sectors of the corresponding block thereon, the replacement sectors of each of the first mapping regions being replaced for the bad sectors of the corresponding block, and an apparatus and a method for recording/reproducing optical information using the optical disk-shaped recording medium.

**3 Claims, 6 Drawing Sheets**



# FIG. 1

( Prior Art )



# FIG. 2

( Prior Art )



U.S. Patent

Aug. 1, 1995

Sheet 3 of 6

5,438,560

FIG. 3





FIG. 4

FIG. 5

FIG. 6



FIG. 7

RECEIVE RECORDING COMMAND FROM HOST CPU — A1

CHECK WHETHER TARGET SECTER IS BAD SECTOR — A2

READ MAPPING SECTOR INFORMATION AND STORE READ INFORMATION INTO MAPPING MEMORY — A3

RECEIVE DATA FROM HOST CPU — A4

CHECK ERROR OF RECEIVED DATA — A5

IS TARGET SECTOR BAD SECTOR? — A6

Yes — A7 — ALLOT REPLACEMENT SECTOR TO TARGET SECTOR, CHANGE REPLACEMENT SECTOR INTO TARGET SECTOR AND UPDATE MAPPING SECTOR INFORMATION

No

SEEK TARGET SECTOR AND SET RECORDING COMMAND — A8

MODULATE AND RECORD DATA — A9

FIG. 8



5,438,560

1

### APPARATUS AND METHOD FOR RECORDING/REPRODUCING OPTICAL INFORMATION AND OPTICAL DISK-SHAPED RECORDING MEDIUM

### BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates in general to the recording/reproduction of optical information, and more particularly to an optical disk-shaped recording medium in which tracks constitute blocks in the unit of a predetermined number, each of the blocks being provided with a data region and a first mapping region, a second mapping region being further provided on one of the blocks having a center one of the tracks, each of the first mapping regions including mapping sectors and replacement sectors, the second mapping region including a mapping information recording region and a replacement sector region for the first mapping regions of the whole of the blocks, and an apparatus and a method for recording/reproducing optical information using the optical disk-shaped recording medium in which bad sectors of the entire tracks can efficiently be handled.

2. Description of the Prior Art

Generally, in recording media such as optical disks, the recording/reproduction of optical information is performed by applying a laser beam condensed in the order of 1 μm to the optical disks. At this time, various errors may be generated due to dust or alien substances on the surfaces of the optical disks and defects thereon. In the optical disk having a so-called track/sector construction, data is encoded and reproduced in the unit of sector for error detection and correction. Conventionally, since error detection/correction codes are in the unit of sector of 512 KByte, they cannot be applied to a disk having a considerable interleave length such as, for example, a compact disk (CD) not employing the sector construction. Also, in the case where burst errors affecting the entire sectors are generated, they cannot be corrected, resulting in abnormal reproduction of the data, differently from random errors occurring at a part of the sectors.

As one of methods for solving the above problem, there is known a replacement method for the optical disk of the recording type in which bad sectors are detected by a reading discrimination operation of reproducing the recorded data, just after the recording to discriminate whether the recorded data is accurately reproduced, and information on the detected bad sectors are recorded on replacement sectors which are formed on particular regions of the optical disk. However, the above-mentioned replacement method has a disadvantage in that the management of the replacement sectors is complex and difficult since the defects on the optical disk of the recording type are increased due to the natural life of the disk and the number of recording times, resulting in an increase in the replacement time.

Also, the optical disk of the reproduction-only type cannot employ the reading discrimination operation since it is stamped in large quantities in a manufacturing plant. As a result, all of the manufactured disks must be read again to search for bad ones among the disks. Reading all the manufactured disks results in an increase in the manufacturing cost.

In a conventional apparatus for recording/reproducing optical information using such an optical disk, in the

2

case where data is repeatedly recorded on the same sector of the optical disk, a bad sector detection circuit detects an error in a sector address to a sector identifier and recognizes a sector of the detected error as a bad sector. In this case, data recorded on a data region cannot be detected ahead of the sector address to the sector identifier. For this reason, data may be recorded on the bad sector. This degrades the reliability.

FIG. 1 is a diagrammatic view illustrating a recording format of a conventional optical disk-shaped recording medium which is shown in U.S. Pat. No. 4,925,717. As shown in this drawing, the conventional optical disk-shaped recording medium comprises tracks, each of which includes a predetermined number of sectors SC (for example, 32 sectors). Each of the sectors SC is partitioned into a predetermined number of blocks BL1–BLn (for example, 42 blocks), each of which is provided with a control recording region (referred to hereinafter as ARC) and an information writing region (referred to hereinafter as ARD). The ARC is provided with a servo region (referred to hereinafter as ARS) and a traverse region (referred to hereinafter as ART). The ARS is provided with a pair of tracking information pits (referred to hereinafter as QA and QC) and a clock information pit (referred to hereinafter as QB). The ART is provided with a pair of traverse information pits (referred to hereinafter as QD and QE) every 16 consecutive tracks. The use of the QD and QE makes the counting of traverses more accurate and, thus, the tracking more accurate.

In other words, the QD and QE are provided on the ART at n interval from each other of a distance P. The QD is shifted at an interval of 4 consecutive tracks, whereas the QE is shifted for each track. The traverse counting is performed in the unit of track by the QD and QE. Therefore, data regarding the number and direction of track jumps can be obtained based on the QD and QE and the tracking can thus be performed more accurately on the basis of the obtained data.

However, the above-mentioned U.S Patent is desirable to make the tracking more accurate by performing the traverse counting at an interval of one track, but has the disadvantage that it cannot propose how to skip a bad sector resulting from an error of the disk and record information on the bad sector on a different region.

### SUMMARY OF THE INVENTION

Therefore, the present invention has been made in view of the above problems, and it is an object of the present invention to provide an optical disk-shaped recording medium in which tracks constitute blocks in the unit of a predetermined number, each of the blocks being provided with a data region and a first mapping region, a second mapping region being further provided on a center one of the entire tracks, each of the first mapping regions including three mapping sectors provided at the head of the last track of each of the blocks and the subsequent replacement sectors provided on the same track, the second mapping region including a mapping information recording region and a replacement sector region for the first mapping regions of the whole of the blocks, and an apparatus and a method for recording/reproducing optical information using the optical. disk-shaped recording medium in which bad sectors of the entire tracks can efficiently be handled.

In accordance with one aspect of the present invention, there is provided an optical disk-shaped recording

5,438,560

3

medium comprising a plurality of tracks, said tracks constituting blocks in the unit of a predetermined number, each of said blocks being provided with a data region and a first mapping region, a second mapping region being further provided on a center one of the entire tracks, each of said first mapping regions including mapping sectors and replacement sectors, said second mapping region including a mapping information recording region and a replacement sector region for said first mapping regions of the whole of said blocks, said mapping sectors of each of said first mapping regions recording mapping information about bad sectors of the corresponding block thereon, said replacement sectors of each of said first mapping regions being replaced for the bad sectors of the corresponding block.

In accordance with another aspect of the present invention, there is provided an apparatus for recording-/reproducing optical information using an optical disk, comprising main processing means for controlling the entire operation of a system; system processing means for transferring a plurality of control signals from said main processing means to the associated components and controlling the associated components under the control of said main processing means; storage means for storing data from said system processing means; error detection/correction means for detecting an error of the data stored in said storing means and correcting the detected error; sector read/write control means for reading and writing a target sector address of the error detected by said error detection/correction means; disk control means for controlling the optical disk in response to the target sector address read from said sector read/write control means; mapping memory means for storing mapping sector information from said system processing means; modulating/demodulating means for modulating the data from said storage means and writing demodulated data into said storage means; control logic means for outputting a control signal in response to an output of said modulating/demodulating means; drive control means for driving the optical disk in response to the control signal from said control logic means; and drive interfacing means for transferring the control signal from said control logic means to said drive control means.

In accordance with a further aspect of the present invention, there is provided a method of recording optical information using an optical disk, comprising the steps of checking whether a target sector of the optical disk on which data is to be recorded is a bad sector, upon receiving a data recording command from main processing means; storing information into storage means in accordance with the checked result; reading information from mapping sectors of a block of the optical disk to which said target sector belongs and storing the read information into mapping memory means; receiving the data to be recorded from said main processing means and checking an error of the received data; checking whether said target sector is the bad sector; allotting a replacement sector of the optical disk to said target sector if it is checked that said target sector is the bad sector and updating the mapping sector information in said mapping memory means; seeking said target sector if it is checked that said target sector is normal and setting the recording command in sector read/write control means so that the data can be recorded on said target sector; and modulating the data and recording the modulated data on said target sector.

4

In accordance with yet another aspect of the present invention, there is provided a method of reproducing optical information using an optical disk, comprising the steps of checking whether a target sector of the optical disk from which data is to be reproduced is a bad sector, upon receiving a data reproduction command from main processing means; storing information into storage means in accordance with the checked result; reading information from mapping sectors of a block of the optical disk to which said target sector belongs and storing the read information into mapping memory means; checking whether said target sector is the bad sector; reading a replacement sector of the corresponding block if it is checked that said target sector is the bad sector; seeking said target sector if it is checked that said target sector is normal and setting the reproduction command in sector read/write control means so that the data can be reproduced from said target sector; moving an optical head to said target sector; demodulating the data read by said optical head; correcting an error of the demodulated data and storing the error-corrected data into said storage means; and sending the error-corrected data stored in said storage means to said main processing means through system processing means.

BRIEF DESCRIPTION OF THE DRAWINGS

The above and other objects, features and advantages of the present invention will be more clearly understood from the following detailed description taken in conjunction with the accompanying drawings, in which:

FIG. 1 is a diagrammatic view illustrating a recording format of a conventional optical disk-shaped recording medium;

FIG. 2 is a diagrammatic view illustrating a construction of a general optical disk;

FIG. 3 is a block diagram of an apparatus for recording/reproducing optical information in accordance with the present invention;

FIG. 4 is a diagrammatic view illustrating data and mapping regions of an optical disk in accordance with the present invention;

FIG. 5 is a diagrammatic view illustrating a format of each block in FIG. 4;

FIG. 6 is a diagrammatic view illustrating a format of a second mapping region in FIG. 4;

FIG. 7 is a flowchart illustrating a method of recording the optical information in accordance with the present invention; and

FIG. 8 is a flowchart illustrating a method of reproducing the optical information in accordance with the present invention.

DETAILED DESCRIPTION OF THE
PREFERRED EMBODIMENTS

Referring to FIG. 3, there is shown a block diagram of an apparatus for recording/reproducing optical information in accordance with the present invention. As shown in this drawing, the recording/reproducing apparatus of the present invention comprises a host central processing unit (CPU) 1 as a main processor for controlling the entire operation of the system, a system interface/system CPU 2 for transferring a plurality of control signals from the main processor 1 to the associated components and controlling the associated components under the control of the main processor 1, and a RAM 3 for storing data from the system interface/system CPU 2.

5,438,560

5        6

An error detection/correction circuit 4 is provided in the recording/reproducing apparatus to detect an error of the data stored in the RAM 3 and correct the detected error.

A sector read/write control circuit 5 is also provided the recording/reproducing apparatus to read and write a target sector address of the error detected by the error detection/correction circuit 4.

A disk controller 6 is also provided in the recording-/reproducing apparatus to control an optical disk 12 in response to the target sector address read from the sector read/write control circuit 5.

The recording/reproducing apparatus also comprises a mapping memory 7 for storing mapping sector information from the system interface/system CPU 2, a modulating/demodulating circuit 8 for modulating the data from the RAM 3 and writing demodulated data into the RAM 3, a control logic circuit 9 for outputting a control signal in response to an output of the modulating/demodulating circuit 8, a drive control circuit 11 for driving the optical disk 12 in response to the control signal from the control logic circuit 9, and a drive interface 10 for transferring the control signal from the control logic circuit 9 to the drive control circuit 11.

The operation of the recording/reproducing apparatus with the above-mentioned construction in accordance with the present invention will hereinafter be described in detail.

First, for the purpose of efficiently managing and handling bad sectors in recording or reproducing data on/from the optical disk, tracks of the optical disk as shown in FIG. 2 constitutes blocks in the unit of a predetermined number (for example, 100 tracks/1 block) as shown in FIG. 4. In FIG. 5, the tracks are numbered beginning with 1, whereas 0 in FIG. 4.

In FIG. 4, each block (100 tracks) is provided with a user data track region 13 including 99 tracks (No. 0–98) and a first mapping region 14 including the remaining one track (No. 99). A second mapping region 15 is further provided on a center one of the entire tracks. Namely, if the total number of the tracks is, for example, 10,000, the second mapping region 15 is provided on the track numbered with 5,000. The second mapping region 15 includes a mapping information recording region and a replacement sector region for the 100 first mapping regions 14 of the whole of the blocks. In this connection, the second mapping region 15 is used for the management and replacement of the bad sectors of the entire tracks.

As shown in FIG. 5, each of the first mapping regions 14 includes three mapping sectors M1–M3 provided at the head of the last track of each of the blocks and the subsequent replacement sectors R1–Rn provided on the same track. In FIG. 6, the replacement sector region of the second mapping region 15 is used when the replacement sectors R1–Rn of each of the first mapping regions 14 are insufficient or when a defect is present on the mapping information recording region of the second mapping region 15. It should be noted that, the number of tracks per block may be such a value that an optical head can scan at a high speed or a value within the optimal operable range of the optical head.

The blocks #1–#N are formatted on the optical disk in the above manner before data is accessed by a drive system. Test data is recorded on the formatted blocks #1–#N. The test data is then reproduced from the blocks #1–#N. In this manner, it is discriminated whether an error is present in the sector address or a

defect is present in the data region. If it is discriminated that the error is present in the sector address, the same mapping information on the corresponding bad sector is recorded on the mapping sectors M1–M3 of the first mapping region 14 of the corresponding block as shown in FIG. 5. Also, the replacement sectors R1–Rn of the first mapping region 14 are used when the mapping sectors M1–M3 of the same first mapping region 14 are bad sectors.

For example, provided that the mapping sector M1 of the first mapping region 14 is bad, the information on the mapping sector M2 thereof is read by the drive system. Similarly, if the mapping sector M2 of the first mapping region 14 is bad, the information on the mapping sector M3 thereof is read by the drive system. Also, as shown in FIG. 6, the second mapping region 15 is provided on the center one (No. 4999) of the entire tracks and includes the mapping information recording region and the replacement sector region for the 100 first mapping regions 14 of the whole of the blocks. All information regarding the first and second mapping regions 14 and 15 are stored in the mapping memory 7. Therefore, actual data is recorded on the optical disk 12 after confirmation of presence of a defect on the corresponding recording region depending on the information in the mapping memory 7. On the other hand, provided that the mapping sector SM1 of the second mapping region 15 is bad, the information on the mapping sector SM2 thereof is read by the drive system. Similarly, if the mapping sector SM2 of the second mapping region 15 is bad, the information on the mapping sector SM3 thereof is read by the drive system.

As mentioned above, the blocks #1–#N are formatted on the optical disk 12 at an interval of 100 tracks. Under this condition, the optical information recording-/reproducing apparatus discriminates the presence of the errors in the sector address and data and the defect on the recording region by recording and reproducing the test data on/from the sectors of the blocks. In accordance with the discriminated result, the recording/reproducing apparatus records the information on the bad sectors on the mapping sectors M1–M3 of the first mapping region 14.

The sector address error signifies a self-error in the sector on which the data is to be recorded. The sector error address is read or written as the target sector address by the sector read/write control circuit 5. The control logic circuit 9 detects the sector error address in response to the output signal from the sector read/write circuit 5.

The data error in the data region is detected as an error detection/correction code by the error detection/correction circuit 4. Recorded on the mapping sectors are addresses of the bad sectors and addresses of the replacement sectors for the bad sectors. Also, states of the replacement sectors are recorded on the mapping sectors.

Referring to FIG. 7, there is shown a flowchart illustrating a method of recording the optical information in accordance with the present invention. First, the main processor 1 generates a recording command to the system interface/system CPU 2 at the step A1. In response to the recording command from the main processor 1, the system interface/system CPU 2 outputs a device command block to the disk controller 6. Upon receiving the device command block, the disk controller 6 instructs the drive control circuit 11 to scan a track of a block to which the target sector belongs. It is checked

A22

5,438,560

7                                                     8

at the step A2 whether the target track/sector (referred to hereinafter as the target sector) is a bad sector. Information is stored in the RAM 3 in accordance with the checked result.

If the target sector has been scanned, the system CPU 2 reads the information from the mapping sector M1 and stores the read information into the mapping memory 7 at the step A3. At this time, the system CPU 2 reads the information from the mapping sector M2 if the mapping sector M1 is bad and, going one step forward, reads the information from the mapping sector M3 if the mapping sector M2 is bad, and then stores the read information into the mapping memory 7.

The system CPU 2 receives data to be recorded on the optical disk from the main processor 1 and stores the received data into the RAM 3 at the step A4. The error detection/correction circuit 4 checks at the step A5 whether correct data from the main processor 1 is sent to the RAM 3. Here, the error detection/correction circuit 4 does not perform the function of detecting and correcting the error of the data, but checks using a parity bit whether correct data from the main processor 1 is sent to the RAM 3.

Then, it is checked at the step A8 whether the target sector is the bad sector. If it is checked at the step A8 that the target sector is the bad sector, a replacement sector address is detected from the mapping information in the mapping memory 7 to allot the corresponding replacement sector to the target sector at the step AT. The allotted replacement sector is changed into the target sector. The information regarding the bad sector and the replacement sector is updated and the updated information is stored in the RAM 7.

In the case where all of the replacement sectors of the corresponding block have been used, one of the sectors of the replacement sector region not used is allotted to the replacement sector. The information regarding the mapping sectors M1–M3 in the mapping memory 7 is updated on the basis of the allotted replacement sector.

If it is checked at tile step A6 that the target sector is normal or after performing the step A7, the disk controller 6 instructs the drive control circuit 11 to seek the track of the block to which the target sector belongs, at the step A8. Also, the disk controller 6 sets the recording command in the sector read/write control circuit 5 so that the data can be recorded on the target sector.

The modulating/demodulating circuit 8 modulates the data from the RAM 8 and outputs the modulated data to the drive control circuit 11 so that the data can be recorded on the target sector of the optical disk 12 at the step A9.

Referring to FIG. 8, there is shown a flowchart illustrating a method of reproducing the optical information in accordance with the present invention. First, the main processor 1 generates a reproduction (read) command to the system interface/system CPU 2 at the step B1. In response to the reproduction command from the main processor 1, the system interface/system CPU 2 outputs a device command block to the disk controller 6. Upon receiving the device command block, the disk controller 6 instructs the drive control circuit to scan the first mapping region 14 of a block to which the target sector from which the data is to be read belongs. It is checked at the step B2 whether the target sector is a bad sector. Information is stored in the RAM 3 in accordance with the checked result.

If the target sector has been scanned, the system CPU 2 reads the information from the mapping sector M1 and stores the read information into the mapping memory 7 at the step B3. At this time, the system CPU 2 reads the information from the mapping sector M2 if the mapping sector M1 is bad and, going one step forward, reads the information from the mapping sector M3 if the mapping sector M2 is bad, and then stores the read information into the mapping memory 7. Also, if the first mapping region 14 is bad or the replacement sector to be used is not present in the first mapping region 14, the system CPU 2 scans the second mapping region 15.

It is checked at the step B4 whether the target sector is the bad sector. If it is checked at the step B4 that the target sector is the bad sector, a replacement sector address is detected from the mapping information in the mapping memory 7 to read a replacement sector of the corresponding block at the step B8.

If it is checked at the step B4 that the target sector is normal, the disk controller 6 instructs the drive control circuit 11 to seek the track of the block to which the target sector belongs, at the step B6. Also, the disk controller 6 sets the read command in the sector read/-write control circuit 5 so that the data can be read from the target sector. An optical head (not shown) is moved to the target sector at the step B7.

After performing the step B7, the data read by the optical head is applied to the modulating/demodulating circuit 8 through the drive control circuit 11 and the control logic circuit 9. The modulating/demodulating circuit 8 demodulates the data from the optical head and outputs the demodulated data to the RAM 3 at the step B8.

The error detection/correction circuit 4 detects the error of the data stored in the RAM 3 and corrects the detected error at the step B9. The error to be corrected is a random error or a burst error which may take place on the disk or due to any other causes when the data is read from the disk.

The error-corrected data from the error detection/-correction circuit 4 is again stored in the RAM 3. The error-corrected data from the RAM 3 is sent to the main processor 1 through the system interface/system CPU 2 at the step B10. In this manner, the reproduction of the data recorded on the optical disk 12 is performed.

As apparent from the above description, according to the present invention, the bad sectors can efficiently be handled although they are generated in large quantities or in use of the optical disk. Therefore, the data, can reliably be recorded or reproduced and the manufacturing cost can be reduced.

Although the preferred embodiments of the present invention have been disclosed for illustrative purposes, those skilled in the art will appreciate that various modifications, additions and substitutions are possible, without departing from the scope and spirit of the invention as disclosed in the accompanying claims.

What is claimed is:

1. A method of recording optical information using an optical disk, comprising the steps of:

  checking whether a target sector of the optical disk on which data is to be recorded is a bad sector, upon receiving a data recording command from main processing means;

  storing information into storage means in accordance with the checked result;

  reading information from mapping sectors of a block of the optical disk to which said target sector belongs and storing the read information into mapping memory means;

5,438,560

**9**

receiving the data to be recorded from said main processing means and checking for an error in the received data;

checking whether said target sector is the bad sector;

allotting a replacement sector located in a center of the optical disk to the target sector if it is detected that said target sector is the bad sector, and updating the mapping sector information in said mapping memory means;

seeking said target sector if it is checked that said target sector is normal and setting the recording command in sector read/write control means so that the data can be recorded on said target sector; and

modulating the data and recording the modulated data on said target sector.

2. A method of reproducing optical information using an optical disk, comprising the steps of:

checking whether a target sector of the optical disk from which data is to be reproduced is a bad sector, upon receiving a data reproduction command from a main processing means;

storing information into storage means in accordance with the checked result;

reading information from mapping sectors of a block of the optical disk to which said target sector belongs and storing the read information into mapping memory means;

checking whether said target sector is the bad sector;

reading a replacement sector in a center block of the optical disk if it is detected that the target sector is the bad sector, and updating the mapping sector information in said mapping memory means:

seeking said target sector if it is checked that said target sector is normal and setting the reproduction command in a sector read/write control means so that the data can be reproduced from said target sector;

moving an optical head to said target sector;

demodulating the data read by said optical head;

correcting an error of the demodulated data and storing the error-corrected data into said storage means; and

sending the error-corrected data stored in said storage means to said main processing means through system processing means.

**10**

3. A method of recording optical information using an optical disk, comprising the steps of:

providing an optical disk-shaped recording medium having on a surface thereof a plurality of tracks, wherein a predetermined number of said tracks constitute blocks, each of the blocks including:

a data region,

a first mapping region, each of which includes:

mapping sectors, each of which includes an area for recording mapping information about bad sectors of the corresponding block thereon, and

replacement sectors, wherein the replacement sectors of each of the first mapping regions are replaced for bad sectors of the corresponding block,

a second mapping region located at a center one of all the tracks, which includes:

a mapping information recording region and

a replacement sector region for the first mapping regions of the entirety of the blocks,

receiving a data recording command from main processing means and determining whether a target sector on which data is to be recorded is a bad sector, responsive to the data recording command;

storing information into storage means in accordance with the bad sector determination;

reading information from the mapping sectors to which the target sector belongs and storing the read information into mapping memory means;

receiving from said main processing means data to be recorded and checking for an error in the received data;

determining whether the target sector is a bad sector;

allotting a replacement sector located in a center of the optical disk to the target sector if it is determined that it is a bad sector and updating the mapping sector information in the mapping memory means;

seeking the target sector if it is determined that it is not a bad sector and setting the recording command in a sector read/write control means so that the received data can be recorded on the target sector; and

modulating the received data and recording the modulated data on the target sector.

*   *   *   *   *

**FORM 30. Certificate of Service**

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on
by:
| 4/28/2014 |

☐ US mail
☐ Fax
☐ Hand
☒ Electronic Means
   (by email or CM/ECF)

| Craig R. Kaufman | | /s/ Craig R. Kaufman |
Name of Counsel                        Signature of Counsel

Law Firm | TechKnowledge Law Group LLP |

Address | 100 Marine Parkway, Suite 200 |

City, State, ZIP | Redwood Shores, CA 94065 |

Telephone Number | 415-902-0602 |

FAX Number | |

E-mail Address | | ckaufman@techknowledgelaw.com

NOTE: For attorneys filing documents electronically, the name of the filer
under whose log-in and password a document is submitted must be preceded
by an "/s/" and typed in the space where the signature would otherwise appear.
Graphic and other electronic signatures are discouraged.